RICHARDSON v. MEDBURY.

DEED—MENTAL INCOMPETENCY OF GRANTOR—EQUITY—LACHES.

> A release to a mortgagee of the mortgagor's equity of redemption will not be set aside 17 years after its execution, and after the death of both of the parties and of the witnesses to the transaction, on the ground of the mental incapacity of the mortgagor, except upon the clearest and most convincing testimony.

Appeal from Wayne; Frazer, J. Submitted November 7, 1895. Decided November 26, 1895.

Bill by Viro W. Richardson, administrator of the estate of Israel E. Richardson, deceased, against Lucetta R. Medbury and others, to establish a trust in land. Complainant appeals from a decree dismissing his bill. Affirmed.

*Haug & Yerkes* and *John G. Hawley*, for complainant.

*Edwin F. Conely* and *Orla B. Taylor*, for defendants.

MONTGOMERY, J. The bill in this case was filed against the heirs of the estate of Samuel Medbury, deceased, to establish a trust in about 10,000 acres of pine land. It is the complainant's theory that Medbury was mortgagee of the lands, although holding legal title in them, and that his heirs are bound to account for moneys received from the sale of these lands, after being reimbursed for the advances and charges, with interest at 10 per cent.

The bill alleges that in 1871 Medbury loaned to Richardson $6,850, and that to secure the payment of this sum, and of additional sums which Medbury was to advance to Richardson, the conveyance of the land was made. The bill also alleges that, on the same day that the conveyance was made, Medbury and Richardson left certain papers in the hands of the cashier of a bank in

the city of Lansing; that among these papers was a
duplicate of the contract; that Medbury afterwards ob-
tained the same without authority of Richardson, and
fraudulently; and that, although subsequently demanded
by Richardson, he refused to give them up. The bill
further alleges that Richardson never received from Med-
bury any other sum of money secured by said convey-
ance. The bill further charges:

"That, soon after said Samuel Medbury had deceit-
fully and fraudulently obtained possession of said Israel
E. Richardson's papers as aforesaid, the said Israel E.
Richardson began to lose his mind, and, at the time said
Samuel Medbury died, said Israel E. Richardson had
become so deranged and insane that he was mentally
incompetent to do business, and failed to comprehend
and understand his own business and rights, and he con-
tinued to grow worse from that time until he died, in
January, 1887; and your orator avers that the mind of
said Israel E. Richardson was weak at the time of the
death of said Samuel Medbury, and continued to grow
worse up to the time of his death, which occurred at the
date aforesaid, and during all that time he was insane
and mentally incompetent to do business, or to clearly
understand a business transaction."

The answer admits that Medbury and Richardson had
dealings and purchased certain pine lands together, but
alleges that they were fully closed, and sets up two agree-
ments, one made March 7, 1870, in which Richardson
acknowledged an indebtedness to Medbury of $31,550,
and Medbury agreed that the lands in question, together
with an hotel property in North Lansing, should be con-
veyed to Richardson upon payment by him of $31,550,
together with taxes and expenses which Medbury should
thereafter incur, with interest at 10 per cent., on or
before March 7, 1871. The instrument, in form, is in the
nature of a land contract running from Medbury to Rich-
ardson. It, however, recognizes that Medbury is the
creditor and Richardson a debtor, and does not mate-
rially change the relations of the parties. But the answer

also sets up that on the 9th day of December, 1871, a further settlement was had between the parties, and an instrument reading as follows was executed and delivered by Richardson to Medbury:

"*Whereas,* the undersigned and Samuel Medbury, of Detroit, Michigan, have had dealings in land lying within the State of Michigan, in various ways, the title to which has been and now is in said Medbury; and *whereas,* I have this day had and made a settlement with said Medbury, and he has bought all my right, title, and interest in said lands, and has paid me the sum of $1,000 therefor, and to settle all and every kind of deed, debts, claims, and demands existing between us, and to compromise and close up all matters of business between us:

"Now, therefore, I do hereby release and discharge said Medbury of all and every claim and demand I might, may, or could have against him, and I do hereby release to him and his heirs all my right, title, claims, and interest, whatever the same may be, in and to all the lands in which I may have had with him, and all the lands about which we have had any deal together, and he to have and to hold the same free and clear of all my interest, claim, and demand thereto.

"In witness whereof I have hereto set my hand and seal this 9th day of December, 1871.

                    "ISRAEL E. RICHARDSON.

    "LEWIS MEDBURY."

On the trial the testimony took a wide range, not being confined to the averments, and not in all respects corresponding to the averments, in the bill. Two points were sought to be established: *First,* that Medbury was an equitable mortgagee to lands greatly exceeding the amount of his debt; and, *second,* that, during the later transactions between the parties, Richardson was mentally incompetent to transact business. No contention was made over the fact that Medbury held the land as security, but it is fully established by the testimony, and now appears conceded by complainant's counsel, that the indebtedness was very much larger than that averred in the bill, and that it aggregated on March 7, 1870, $31,550. The evidence does show that the lands held as security

were worth considerably more than the indebtedness, but the difficulty of determining at this late day just how unequal the bargain between the parties really was is manifest.

It would seem that, after the agreement of 1870, a further small sum was advanced, and that finally, on the 9th day of December, 1871, a full settlement between the parties was made. We find nothing in the transaction between the parties to warrant us in holding that the agreement was invalid, unless the claim of Mr. Richardson's mental incompetency is established. While the law is jealous of transactions between the mortgagor and mortgagee, there is no rule of law which prevents the mortgagee from in good faith becoming the purchaser of the equity of redemption. Richardson lived until January 23, 1887,—more than fifteen years after the transaction was finally closed,—and took no steps to set it aside. In determining the question of mental capacity, the allegations of the bill, which was sworn to by complainant, should be kept in mind. The bill avers that Mr. Richardson began to lose his mind soon after the transaction, which, it is averred in the bill, occurred in 1871. While we by no means consider this date conclusively binding upon complainant, it has a bearing on his testimony in reference to the mental capacity of the deceased. On the hearing the complainant gave testimony tending to show the incompetency of Mr. Richardson as early as 1868, whereas in his bill of complaint he fixed the date when the deceased began to lose his mind as 1871. Complainant's testimony is corroborated by numerous witnesses. The testimony shows that Richardson was eccentric, and was a believer in spiritualism; and numerous witnesses express the opinion that he was not, from 1868 on, competent to do business. There is, however, no direct proof as to his mental capacity at the precise time when these transactions of March, 1870, and December, 1871, were made, except as it is covered by general testimony. The family of Richardson at that time consisted of his son,

the complainant, then 22 years of age, an older son, 25 years of age, and two daughters. It is significant that, with knowledge that Mr. Richardson was during all this time engaged in transacting important business with Mr. Medbury and others, no steps were taken to have a guardian appointed over him, or to investigate his business affairs; and, although he lived until 1887, no claim was ever made by his grown sons that he had ever been overreached. In May, 1871, complainant wrote Mr. Medbury the following letter:

"SAMUEL MEDBURY, Esq.

"Dear Sir: Knowing that you and my father have heretofore been interested in land matters, I wish to submit to you a proposition, and, as I shall be in Detroit for a few days some time in July, I will call and ascertain your decision. It is that you employ me to look after and hunt lands for you. I have had considerable experience in the lumber woods, and feel that I could, in these ways, earn the salary you would pay me. I hope, on consideration, you will find some position for me. My eyesight is failing me in the printing business, and I must choose some other labor. I should require $1,000 a year, including all expenses, hoping, by attention and industry, to secure better favors in the future. I will furnish, if required, recommendations from Judge Longyear, Hawes, and others. You may answer, if convenient.

"I am sir,
"Very respectfully,
"VIRO W. RICHARDSON."

This letter was written after the contract of March 7, 1870, had expired, and when, by the terms of the contract, Israel E. Richardson had no longer any interest in the land. The letter written by the complainant refers to the dealing between the parties as a matter which had terminated. The letter contained no suggestion of overreaching, or that Mr. Richardson was mentally incompetent. Under the circumstances disclosed by this letter, and in view of the long delay from 1871 to 1888, when this bill was filed, and of the fact that Mr. Medbury died in 1874, and that the witnesses to the trans-

actions between the parties are now silent in their graves; the testimony which should be held sufficient to set aside the transaction ought to be clear and convincing, and should be sufficient to overcome the presumption of honest dealing, and the strong inference of sanity which arises from the inaction of the relatives and friends of Mr. Richardson during this long term of years. *Burt* v. *Mason*, 97 Mich. 127. The circuit judge, who had the advantage of seeing the witnesses and noting their appearance on the stand, determined the question of fact in favor of the defendants, and, after a careful examination of the record, we are not disposed to disturb his decision.

The decree will be affirmed, with costs.

The other Justices concurred.